IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD M. WULF, JR. as an individual and as a representative of the classes | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, L.P. | : | NO. 10-5176 |

### REPORT AND RECOMMENDATION

**ELIZABETH T. HEY**
**UNITED STATES MAGISTRATE JUDGE**                          **April 15, 2011**

In this case involving a home mortgage loan, Plaintiff alleges that Defendants forced him to purchase and maintain flood insurance in amounts greater than required by law, greater than Defendants' interest in his property, and contrary to the amounts agreed upon in the mortgage documents.[1]  Specifically, Plaintiff alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA") and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, et seq., ("UTPCPL"), and contends that the Defendants committed fraud, breached the covenant of good faith and fair dealing, and breached the original mortgage agreement.  Defendants have moved to dismiss the Complaint.

---

[1]Although Plaintiff has sought to bring this case as a class action, the court has not yet ruled on the class certification.  I offer no opinion on that issue and address only the adequacy of Plaintiff's individual action.

## I.   **FACTUAL BACKGROUND**

The Complaint alleges the following facts.  On July 28, 2009, Plaintiff took out a mortgage on his home from Fulton Bank in the amount of $108,007.  Doc. 1 (Compl.) ¶ 11.  The property was located in a Special Hazard Flood Area ("flood zone") and the mortgage required that Plaintiff obtain flood insurance.  Id. ¶ 12.  At that time, Plaintiff received and signed a "Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance Participating Communities" ("Flood Hazards Notice"), stating that "[a]t a minimum, flood insurance purchased must cover the lowest of:  (1) the outstanding principal balance of the loan(s); or (2) the maximum amount of coverage allowed for the type of building under [National Flood Insurance Program]; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan."  Id. ¶ 13; Doc. 24 (Pl.'s Memo) Exh. 1.[2]  The mortgage agreement incorporated the Flood Hazards Notice, and provided that Plaintiff was required to insure the property against flood loss "to the extent required by the Secretary of Housing and Urban Development ("HUD").  Doc. 1 ¶ 14; Doc. 13 (Defs.' Memo.) at 4 ¶ 4.  At the time of the loan's origination, Plaintiff obtained flood insurance in the amount of $110,000, with an annual premium of $1,016.  Doc. 1 ¶ 15.

---

[2]The National Flood Insurance Program ("NFIP"), established by the National Flood Insurance Act of 1968 ("NFIA"), underwritten by the United States Treasury and administered by the Federal Emergency Management Authority ("FEMA"), provides flood insurance below actuarial rates.  Suopys v. Omaha Property & Casualty, 404 F.3d 805, 807 (3d Cir. 2005).

In September 2009, Bank of America ("BOA") purchased Plaintiff's mortgage. Doc. 1 ¶ 16.  On July 29, 2010, Defendants sent Plaintiff a letter advising Plaintiff that his flood insurance coverage was not adequate and requiring him to increase his coverage by $103,703.  Id. ¶ 17; Doc. 24 Exh. 2.  BOA informed Plaintiff that if he did not provide evidence of acceptable flood insurance coverage by September 16, 2010, one of BOA's subsidiaries would purchase the coverage at Plaintiff's expense.  Doc. 1 ¶ 20; Doc. 24 Exh. 2.[3]

On August 27, 2010, Plaintiff obtained the additional flood insurance coverage at an additional cost of $332 per year.  Doc. 1 ¶¶ 19, 21.  On September 21, 2010, Defendants sent Plaintiff a Notice of Force Placement, notifying him that BAC had purchased the additional flood insurance coverage and would charge the cost of the insurance to him.  Id. ¶ 22.

On October 1, 2010, Plaintiff filed this Complaint.  See Doc. 1.  Plaintiff contends that BOA violated TILA by failing to timely and clearly disclose its flood insurance requirements, by misrepresenting to Plaintiff the federal requirements for flood insurance, and by adversely amending the terms of his mortgage without his consent by requiring that he purchase additional flood insurance.  Id. ¶¶ 39-40.  Plaintiff also contends that Defendants' actions in misleading him into believing his mortgage agreement and/or

---

[3]This is commonly known as "force-placed" or "lender-placed" insurance.  See, e.g., Williams v. Certain Underwriters at Lloyd's of London, 398 Fed. Appx. 44, 45 (5th Cir. 2010).

federal law required additional flood insurance, and force-placing the additional coverage violated the UTPCPL.  Id. ¶¶ 49-50.  Similarly, Plaintiff contends that Defendants' requirement of additional flood insurance on the basis that his coverage was inadequate constituted fraud, a breach of contract, and a breach of the covenant of good faith and fair dealing.  Id. ¶¶ 55, 58, 63, 64, 70.

On December 3, 2010, Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), maintaining that the plain language of Plaintiff's mortgage left to the discretion of the lender the amount of flood insurance required.  See Doc. 13 at 1-2.  Moreover, Defendants claim that flood insurance is exempted from TILA's disclosure requirements and that the TILA claim is untimely.  Id. at 2.  Finally, Defendants claim that the fraud and UTPCPL claims must fail because they are barred by the economic loss doctrine and Plaintiff has failed to allege any misrepresentation or scienter, and that the breach of the covenant of good faith is merely a restatement of the breach of contract claim.  Id.  Plaintiff filed a response to the Motion to Dismiss on December 30, 2010.  See Doc. 24.  On January 18, 2011, Defendants filed a reply.  See Doc. 28.  The Honorable Mary McLaughlin, to whom the case is assigned, referred the Motion to Dismiss to the undersigned for a report and recommendation.  See Doc. 18.

4

## II.    <u>LEGAL STANDARD</u>

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  Although Rule 8 of the Federal Rules of Civil Procedure requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2) and <u>Conley</u>, 355 U.S. at 47).  Similarly, "naked assertions devoid of further factual enhancement" will not suffice.  <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

In considering a motion to dismiss, a court must accept all well-pleaded facts as true, but should disregard any legal conclusions.  <u>See ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994) (citing <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).  The court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Iqbal</u>, 129 S.Ct. at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Donnelly v. O'Malley & Langan, P.C.</u>, No. 09-3910, 2010 WL 925869 at *2 (3d Cir. March 16, 2010) (quoting <u>Iqbal</u>, 129 S.Ct. at 1949).  In making this determination, courts

must accept as true any reasonable inferences that may be drawn from plaintiff's allegations, and view those facts and inferences in the light most favorable to plaintiff. See Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Third Circuit has summarized the post-Twombly standard as follows:  "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element . . . . This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  "Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'"  Id. (quoting Twombly, 550 U.S. at 570).

In considering a motion to dismiss the court may not consider "matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  However, the court may consider documents that are "integral to or explicitly relied upon on the complaint."  Id.  Because the Complaint relies upon the language of the mortgage, the documents incorporated by the mortgage, and the subsequent letter of flood insurance inadequacy, I have considered these documents in considering the motion to dismiss.

III.    **DISCUSSION**

A.      **Breach of Contract (Fifth Claim for Relief)**

The first argument presented by Defendants is one of simple contract construction.

Each of Plaintiff's claims is based on the premise that his mortgage required flood

insurance to cover only the outstanding balance of the mortgage.  The provision at issue

reads as follows:

> **4.  Fire, Flood and Other Hazard Insurance.**
> Borrower shall insure all improvements on the Property,
> whether now in existence or subsequently erected, against any
> hazards, casualties, and contingencies, including fire, for
> which Lender requires insurance.  This insurance shall be
> maintained in the amounts and for the periods that Lender
> requires.  Borrower shall also insure all improvements on the
> Property, whether now in existence or subsequently erected,
> against loss by floods to the extent required by the Secretary.
> All insurance shall be carried with companies approved by
> Lender.  The insurance policies and any renewals shall be
> held by Lender and shall include loss payable clauses in favor
> of, and in a form acceptable to, Lender.

Doc. 13 Exh. A (Mortgage) ¶ 4.

Defendants first argue that the second sentence of the above language in the

mortgage unambiguously required Plaintiff "to purchase and maintain flood insurance

coverage 'in the amounts and for the periods' that the lender requires."  Defs.' Memo. at

1-2.  Thus, Defendants maintain that they had discretion to set the amount of flood

insurance coverage on the property within the limits prescribed by federal law.  Id.

Therefore, the increased flood insurance coverage was within the plain meaning of the

mortgage's terms, did not change the terms of the mortgage, and did not constitute a breach of contract, fraud, a violation of the UTPCPL, or a breach of fair dealing.

Plaintiff argues that the sentence referred to by Defendants applies to hazard insurance, not flood insurance, and that instead the third sentence specifically referring to flood insurance controls.  See Doc. 24 at 11.  Additionally, even if the second sentence applies, Plaintiff argues that it is clear that flood insurance coverage in the amount of the loan was all that the lender required.  See id. at 3, 10-12.

In determining whether a contract is ambiguous, even when it seems unambiguous, the court should consider the contract language, the meanings suggested by counsel, and extrinsic evidence offered in support of each interpretation, which can include the structure of the contract and the conduct of the parties to the contract.  See Bethlehem Steel Corp. v. United States, 270 F.3d 135, 139 (3d Cir. 2001).  Moreover, at this stage of the litigation, the court must construe all facts in favor of the non-moving party.  In this case, evaluation of the contract itself, the Disclosure Form signed by Plaintiff, and the course of dealing between the parties to the mortgage contract, lead me to conclude that the provisions relating to flood insurance are ambiguous.

The second sentence upon which Defendants rely is a general statement, referring to all hazard insurance, not specifically flood insurance.  It is far from clear that this sentence refers to flood insurance.  Moreover, if the term hazard insurance does refer to flood insurance, when read together with the Disclosure Statement given to Plaintiff at

8

the loan closing, it would appear that he was required to carry only $108,007 worth of

flood insurance coverage.  See Truth-In-Lending Disclosure Statement, Exh B to Doc. 13

(requiring property hazard insurance in the amount of $108,007).

The third sentence of the insurance provision of the mortgage specifically refers to

flood insurance, but is, in itself, ambiguous.  The third sentence requires the borrower to

insure the property against floods "to the extent required by the Secretary."  Mortgage at

¶ 4, sentence 3.  Both sides agree that the Secretary refers to the Secretary of Housing and

Urban Development ("HUD").  Beyond that, the parties disagree about the meaning of

this provision.  Plaintiff argues that the Secretary requires insurance only to the extent the

property is mortgaged.  Defendants maintain that the third sentence of the insurance

provision merely sets the boundaries within which they can require flood insurance.

Plaintiff and Defendants do not even agree about where to find the Secretary of

HUD's requirements with respect to flood insurance.  In his Complaint, Plaintiff relied on

HUD's website for the flood insurance requirements, whereas Defendants rely on a HUD

regulation.  See Doc. 1 ¶ 14; Doc. 13 at 7.  Beginning with the statute, the NFIA states,

> Each Federal entity for lending regulation . . . shall by
> regulation direct regulated lending institutions not to make,
> increase, extend, or renew any loan secured by improved real
> estate or a mobile home located or to be located in an area
> that has been identified by the Director as an area having
> special flood hazards and in which flood insurance has been
> made available under the [NFIA] . . . unless the building or
> mobile home and any personal property securing such loan is
> covered for the term of the loan by flood insurance **in an
> amount at least equal to** the outstanding principal balance of

9

> the loan or the maximum limit of coverage made available
> under the Act with respect to the particular type of property,
> **whichever is less**.

42 U.S.C. § 4012a(b)(1) (emphasis added).  The HUD regulation, cited by Defendants,

uses similar language:

> **§ 203.16a Mortgagor and mortgagee requirement for
> maintaining flood insurance coverage.**
>
> (c) The flood insurance must be maintained during such time
> as the mortgage is insured **in an amount at least equal to**
> either the outstanding balance of the mortgage, less estimated
> land costs, or the maximum amount of the NFIP insurance
> available with respect to the property improvements,
> **whichever is less**.

24 C.F.R. § 203.16a (emphasis added).[4]

Plaintiff focuses on the phrase "whichever is less," arguing that the language of

the statute and regulation establish that he needed only to carry flood insurance coverage

in the amount of the outstanding mortgage balance.  See Doc. 24 at 8.[5]  Defendants focus

on the phrase "in an amount at least equal to," arguing that the amount of the mortgage

sets only a minimum amount of flood insurance required, but allows the Secretary, and

---

[4]The Flood Hazards Notice uses similar phrasing, notifying borrowers that flood
insurance must be obtained "[a]t a minimum" to cover "the lowest of" the principal
balance, the NFIP maximum, or the full replacement cost value of the property securing
the loan.  Doc. 24 Exh. 1.

[5]In this case, all parties agree that the outstanding mortgage was less than the
maximum amount of NFIP insurance available ($250,000), and that the total coverage
requested by BOA, approximately $213,703, was less than the NFIP limit.  See Docs. 13
at 8, 24 at 9.

thus the Lender, to require more.  See Doc. 13 at 8.[6]  At this point, both the mortgage and the NFIA are sufficiently ambiguous to make Plaintiff's understanding plausible.  Thus, dismissal a this stage is inappropriate.[7]

In addition to the language of the mortgage, the conduct of the parties to the mortgage also leads to the conclusion that Plaintiff's claims are plausible.  When Plaintiff entered into the mortgage contract with Fulton Bank, flood insurance in the amount of the outstanding balance was sufficient.  Thus, the original party to the mortgage understood the document to require only flood insurance coverage to the extent of the mortgage.  For all of these reasons, I find that, considering the language of the mortgage, dismissal of the breach of contract claim is inappropriate.

---

[6]I note that the caselaw cited by Plaintiff, although not directly applicable to his case, favors his reading of the flood insurance requirements to set a limit on the flood insurance coverage a lender may require.  See Hofstetter v. Chase Home Finance, LLC, __ F.Supp.2d __, 2010 WL 4606478, at *10 (N.D. Cal. Oct. 29, 2010) ("Hofstetter II") (plausible violation of NFIA by requiring flood insurance in excess of credit limit); Till v. Unifirst Federal Sav. & Loan Ass'n, 653 F.2d 152, 159 (C.A. Miss. 1981) (42 U.S.C. § 4012a(b) requires flood insurance for the amount and term of the outstanding mortgage balance, not for the equity of the borrower).

[7]In a case that also arose out of a later requirement for additional flood insurance coverage, the court granted the lender's motion for summary judgment on the lender's claim that the increased flood coverage requirement breached the mortgage contract.  See Hayes v. Wells Fargo Home Mortgage, No. 06-1791, 2006 WL 3193743 (E.D. La. Oct. 31, 2006).  However, with respect to flood and hazard insurance, the Hayes' mortgage specifically stated, "[w]hat Lender requires pursuant to the preceding sentence can change during the term of the Loan."  Id. at *2.  Plaintiff in this case did not have notice that the flood or hazard insurance required could change.  Hayes was also decided at the summary judgment stage, and the plaintiff had failed to produce any evidence that the parties agreed that flood insurance in the amount of the loan balance was all that was required.

**B.**    <u>Breach of Covenant of Good Faith and Fair Dealing (Fourth Claim for Relief</u>

Defendants seek dismissal of Plaintiff's fourth count for a breach of the covenant of good faith and fair dealing, arguing that such a claim is merely duplicative of his breach of contract claim. <u>See</u> Doc. 13 at 9-10. Plaintiff argues that the claim asserting a breach of the covenant of good faith and fair dealing goes further than merely alleging a breach of the mortgage contract. As an alternative, Plaintiff suggests permitting formal incorporation of his claim of the breach of the implied covenant of good faith and fair dealing into his breach of contract claim. <u>See</u> Doc. 24 at 30 n.20.

Reviewing the Complaint, it appears that Plaintiff restates the bases for the breach of contract claim -- requiring excess flood insurance and force placing flood insurance coverage in excess of his principal balance -- in his claim for breach of good faith and fair dealing. <u>See</u> Doc. 1 ¶ 63. To the extent the fair dealing claim is merely a restatement of the breach of contract claim, it should be dismissed because Pennsylvania does not recognize a separate cause of action for breach of good faith and fair dealing for the actions forming the basis of the breach of contract claim. <u>See</u> <u>LSI Title Agency, Inc. v. Evaluation Services, Inc.</u>, 951 A.2d 384, 391 (Pa. Super. 2008) (no independent cause of action where the underlying facts are essentially the same). However, the breach of the covenant of good faith and fair dealing count also alleges that Defendants engaged in bad faith in exercising any discretionary authority granted Defendants by the mortgage. <u>See</u>

id. Thus, it is more than just merely a restatement of the allegations contained in the breach of contract claim.

Review of the caselaw reveals that the prevailing rule in Pennsylvania is that a claim alleging a breach of the covenant of good faith must be pled as a breach of contract claim.  See McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Business Trust, No. 08-961, 2009 WL 1292808 (W.D. Pa. May 7, 2009) (reviewing federal and state caselaw on the subject).  Therefore, rather than requiring a formal amendment, Plaintiff's suggestion to incorporate the paragraphs of the Complaint relating to the breach of good faith and fair dealing into the breach of contract section seems to be a logical solution. Therefore, I will recommend that the separate claim for breach of the covenant of good faith and fair dealing be dismissed.  However, the claim for breach of contract should be construed as also containing any additional allegation in count four.

### C.   Economic Loss Doctrine  (Second and Third Claims for Relief)

Defendants argue that Plaintiff's claims for violation of the UPTCPL (Second Claim for Relief) and common law fraud (Third Claim for Relief) should be dismissed because the losses alleged are solely economic and therefore barred by the economic loss doctrine and because Plaintiff has failed to allege the elements of these claims.  See Doc. 13 at 10-14.  Plaintiff counters that acceptance of Defendants' argument would eliminate every claim for mortgage fraud.  See Doc. 24 at 23-28.

13

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). The doctrine focuses on the nature of the underlying right or duty. If the alleged breach arises from the parties' agreement, the remedy lies in contract; however, where the alleged breach arises from a social policy or standard, the tort remedy is appropriate. See In re Fowler, 425 B.R. 157, 191 (E.D. Pa. 2010) (if source of duty allegedly breached arose from agreement rather than social policy, plaintiff is limited to contract claim).

The parties dispute the relevance of the Third Circuit's decision in Werwinski. In that products liability case, the Third Circuit recognized that the Pennsylvania Supreme Court had not yet ruled on the viability of the economic loss doctrine, and predicted that it would adopt the doctrine and apply it in cases involving both commercial and individual parties. 286 F.3d at 671-74. Of importance here, the Third Circuit also predicted that the Pennsylvania Supreme Court would not adopt a blanket exception to the economic loss doctrine for intentional fraud. Id. at 680-81. In reviewing the caselaw across the country, the court noted with approval an "emerging trend" that "recognize[s] a limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independent[ly] of the underlying contract." Id. at 676 (quoting Raytheon Co. v. McGraw-Edison Co., Inc., 979 F.Supp. 858, 870 (E.D. Wis. 1997)). Such an exception

14

would allow a plaintiff to bring a fraud claim "only if the fraud is 'extraneous to the contract,' not 'interwoven with the breach of contract.'" <u>Werwinski</u>, 286 F.3d at 676 (quoting <u>Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.</u>, 209 Mich. App. 365, 532 N.W. 2d 541, 545 (1995)).

   Plaintiff argues that there have been numerous cases rejecting <u>Werwinski</u>'s adoption of such a narrow fraud exception and that, in any event, the facts of this case fall into <u>Werwinski</u>'s exception.  Despite several cases questioning <u>Werwinski</u>, none have come from the Pennsylvania Supreme Court or the Third Circuit.[8]  Therefore, this court is bound by <u>Werwinski</u>.

> Notably, <u>Werwinski</u> has been the subject of criticism from lower state courts. . . . Absent contrary authority from the Third Circuit or Pennsylvania Supreme Court, however, this Court is bound to the holding of <u>Werwinski</u>.

<u>Ferki v. Wells Fargo Bank</u>, No. 10-2756, 2010 WL 5174406, at *10, n.5 (E.D. Pa. Dec. 20, 2010) (internal citations omitted).

---

[8]I note that several of the cases relied upon by Plaintiff do not actually undermine the holding of <u>Werwinski</u>.  Instead, these cases have construed <u>Werwinski</u> to permit tort claims to proceed if they are independent of the contract.  <u>See</u> <u>Fowler</u>, 425 B.R. at 191 (the issues do not "recast or duplicate the elements" of contract claim); <u>Clark v. EMC Mortgage Corp.</u>, No. 08-1409, 2009 WL 229761 (E.D. Pa. Jan. 29, 2009) (dismissing fraud claim that restated contract claim, but allowing UTPCPL claim based on allegations predating the agreement); <u>NutriSystem, Inc. v. Nat'l Fire Ins. of Hartford</u>, No. 09-6932, 2004 WL 2646598 (E.D. Pa. Nov. 19, 2004) (claims characterized as tort but arising from contract were barred, but tort claims arising from breach of social policy permitted to proceed); <u>Air Pros. Chems., Inc. v. Eaton Metal Prods. Co.</u>, 256 256 F.Supp.2d 329, 336 (E.D. Pa. 2003) (allowing negligent misrepresentation claim when misrepresentation did not involve the subject matter of the contract).

So, I must now determine whether the facts of this case fall into Werwinski's exception.  Plaintiff argues that the fraud and UTPCPL claims are based on BOA's misrepresentation that his flood insurance was not adequate, and that the misrepresentation was independent of the mortgage contract.  Defendants instead focus on the fact that Plaintiff has suffered only an economic loss.

Plaintiff's argument is facially appealing because the alleged fraud and misrepresentation arose from a document separate from the mortgage -- the letter advising them that their flood insurance was inadequate.  However, resolution of the question whether Defendants made misrepresentations about the requirements for additional flood coverage will turn on construction of the language of paragraph 4 of the mortgage.[9]  Thus, any claim based on the misrepresentation of the flood insurance coverage required is interwoven with the mortgage itself.

In Ferki, as in this case, the UTPCPL claim arose from a subsequent action taken by the loan holder.  2010 WL 5174406, at *1-2.  Ferki obtained a line of credit secured by a pledge of stock shares.  The loan documentation provided that if there was a drop in the stock price, the bank would notify Ferki and he could rectify the deficiency without liquidating his stock shares.  If Ferki did not rectify the deficiency, the bank would

---

[9]As previously discussed, Defendants read the second sentence of paragraph 4 to give them discretion in fixing the amount of flood insurance required.  Plaintiff relies on the third sentence to argue that the amount of flood insurance required is the loan balance. In either event, the mortgage is the document which defines the amount of flood coverage required.

liquidate the stock.  Id.  Nearly four years later, the bank liquidated the stock.  Ferki

brought suit, raising both contract and tort claims, claiming that he had never received

notice of a deficiency.  The bank sought to dismiss the UTPCPL claim based on the

economic loss doctrine.  Id. at *9.  The Honorable Ronald Buckwalter found that because

the loan agreement gave rise to the duty to give notice of the deficiency, the economic

loss doctrine barred the UTPCPL claim.  "[F]raudulent representations concerning a

party's performance of a contract are interwoven with the terms of the contract."  Id. at

*10 (citing Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc., No. 06-5469, 2007

WL 2254422, at *7 (E.D. Pa. Aug. 7, 2007); Reilly Foam Corp. v. Rubbermaid Corp.,

206 F.Supp.2d 643, 659 (E.D. Pa. 2002)).  Similar reasoning applies to Plaintiff's case.

The current case is also similar to Sarsfield v. Citimortgage, Inc., 707 F.Supp.2d

546 (W.D. Pa. 2010), cited by Defendants.  In Sarsfield, homeowners brought contract

and tort claims against the holder of the mortgage, claiming that the mortgage disclosure

statement failed to properly inform them of the annual taxes on the property.  Plaintiffs

became aware of the deficiency when they received a letter after closing from the lender

advising them that their escrow balance was inadequate to cover the taxes.  Id. at 549-50.

Defendants moved to dismiss the tort claims, arguing that they were barred by the

economic loss doctrine.  The court agreed.

> [T]he court concludes that the torts allegedly committed by
> Defendant are inextricably entwined with the mortgage
> contract between the parties, such that, without the existence
> of the contract no duties would have arisen.

17

Id. at 553.  This conclusion is consistent with the holding in Werwinski permitting tort claims only where the claims "arise independently of the underlying contract."  286 F.3d at 676.

Here, the lender who acquired Plaintiff's mortgage notified him prior to the first anniversary of his loan that the flood coverage was inadequate.  Whether the lender was permitted to require additional coverage has yet to be determined and requires interpretation of the mortgage, lending further support for the conclusion that the fraud and contract claims are "inextricably entwined."  Sarsfield, 707 F.Supp.2d at 553.  Thus, I conclude that Plaintiff's claims for fraud and violation of the UTPCPL are barred by the economic loss doctrine.[10]

### D.    Truth in Lending Act  (First Claim for Relief)

Defendants also challenge the first count of Plaintiff's Complaint (the TILA violation).  In the Complaint, Plaintiff alleges that Defendants failed to disclose the flood insurance requirements, and changed the terms of the mortgage by requiring additional flood insurance.  See Compl. ¶¶ 39, 40.  Defendants argue that flood insurance costs are exempt from disclosure requirements.  In addition, Defendants contend that any alleged TILA violation is time-barred.

---

[10]Having determined that the economic loss doctrine bars Plaintiff's fraud and UTPCPL claims, it is not necessary to address Defendants' argument that Plaintiff failed to plead these claims with sufficient specificity.  See Doc. 13 at 13-14

### 1.     Exemption from TILA Disclosure Requirements

Defendants first claim that flood insurance costs are exempt from disclosure under TILA, arguing that such charges are excluded from the finance charge. See Doc. 13 at 14-15. In response, Plaintiff argues that Defendants' demand for increased insurance and inaccurately stating Plaintiff's obligations under the mortgage is actionable under TILA, and that, by requiring the purchase of additional insurance, Defendant entered into a separate transaction, triggering disclosure requirements. See Doc. 24 at 12-18.

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosure of terms." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).

Part 226 of Title 12 of the Code of Federal Regulations, otherwise known as Regulation Z, contains TILA's implementing regulations. They require lenders to provide material disclosures to borrowers, including the finance charges associated with the loan. See 12 C.F.R. §§ 226.4, 226.18. "Premiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction" are considered part of the finance charge that must be disclosed. Id. § 226.4(b)(8). However, pursuant to section

226.4(d)(2), insurance premiums may be excluded from the finance charge in certain

circumstances.

> Premiums for insurance against loss of or damage to property,
> or against liability arising out of the ownership or use of
> property, including single interest insurance if the insurer
> waives all right of subrogation against the consumer, may be
> excluded from the finance charge if the following conditions
> are met:
>> (i) The insurance coverage may be obtained
>> from a person of the consumer's choice, and
>> this fact is disclosed.  (A creditor may reserve
>> the right to refuse to accept, for reasonable
>> cause, an insurer offered by the consumer.)
>> (ii) If the coverage is obtained from or through
>> the creditor, the premium for the initial term of
>> insurance coverage shall be disclosed.  If the
>> term of insurance is less than the term of the
>> transaction, the term of insurance shall also be
>> disclosed.

12 C.F.R. § 226.4(d)(2).

Defendants maintain that the cost of the flood insurance was not subject to

disclosure because Plaintiff obtained his flood insurance and the additional coverage from

a company of his own choosing.  See Doc. 13 at 14-15 (citing Compl. ¶ 21).  This

argument ignores a factual allegation in the Complaint -- that Defendants did purchase

force-placed insurance for Plaintiff's property and charged the cost of the policy to

Plaintiff, stating that such cost "may become an additional debt secured by [Plaintiff's]

mortgage or deed of trust and/or escrowed."  Doc. 1 ¶ 22 (referring to a "Notice of Force

Placement" not attached to the Complaint).  It is unclear at this stage whether the "Notice of Force Placement" included any disclosure of the term and cost.[11]

Moreover, several courts have concluded that a charge for insurance not authorized by the loan documentation constitutes a finance charge and requires disclosure, contradicting Defendants' argument that the increased flood insurance costs are exempt from TILA disclosure.  Plaintiff relies heavily on Hofstetter v. Chase Home Finance, LLC, No. 10-01313, 2010 WL 4606478 (N.D. Cal. Oct. 29, 2010), "Hofstetter II."  In Hofstetter II, the plaintiffs obtained home equity lines of credit from the defendant secured by properties located in flood zones.  With respect to one of the plaintiffs, much like the facts of our case, he had obtained flood insurance coverage in the amount of his credit line.  He was later advised that he was required to increase his coverage to $250,000.  Id. at *3.  The court found that the NFIA required flood coverage of $100,000 the amount of his credit line, and that the lender's requirement of additional coverage violated TILA.  Id. at *10.

Defendants argue that Hofstetter II is inapposite because the loan was an open-ended transaction and the regulations relied upon by the court have no corollary in the realm of closed-end credit transactions.  See Doc. 28 at 9-10.  Specifically, the Hofstetter

---

[11]Defendants' only argument, which Plaintiff obviously disputes, is that the cost for flood insurance coverage was not subject to disclosure under TILA.  It would be premature at this stage to conclude as a matter of law that TILA does not apply to Defendants' requirement that Plaintiff obtain more insurance, either as part of the initial loan disclosures or at the time of the increase.

II court relied on section 226.5b(d)(7) of the governing regulations which requires lenders to disclose fees required to "maintain" a credit plan, and section 226.5b(f)(3) which prohibits changing the terms of a home equity plan. 2010 WL 4606478, at *8. These regulations are applicable to only open-ended credit transactions. However, considering the underlying purpose of TILA and other cases involving closed-end credit transactions requiring disclosures by the lender, I believe dismissal of the TILA claim at this stage is inappropriate.

In Bermudez v. First of America Bank Champion, N.A., 860 F. Supp. 580 (N.D. Ill. 1994) (withdrawn by settlement), the plaintiffs alleged that the defendant obtained and charged the plaintiffs for force-placed insurance covering borrowers' default on automobile loan contracts, which was not authorized by the sales or loan contracts. Id. at 586. In allowing the plaintiffs' TILA claim to go forward, the court noted that the loan contracts were "at best ambiguous with respect to what coverage [the defendant] was authorized to purchase." Id. at 601. Any amount found to be unauthorized, the court concluded, could be found to constitute a finance charge, requiring disclosure under section 226.4(d). Id.

Partially relying on Bermudez, the court in Travis v. Boulevard Bank, N.A., 880 F.Supp. 1226 (N.D. Ill. 1995), concluded that the plaintiffs had stated a TILA claim in arguing that the lender failed to disclose charges for vehicle insurance defendant had procured covering default and unearned finance charges without authorization.

> The court believes that the Defendant's purchase of the
> allegedly unauthorized insurance and the subsequent addition
> of the resulting premiums to Plaintiffs' existing indebtedness
> constituted a new credit transaction . . .  requir[ing] new
> disclosures under TILA.

Id. at 1229-30.  The lender also argued that the original disclosures were accurate and

were only rendered inaccurate by the plaintiff's failure to procure insurance, eliminating

the need for disclosures.  The court rejected this argument, finding that the post-

consummation inaccuracy was "the result of Defendant's departure from the contract."

Id. at 1230.  Under such circumstances, the court concluded that the plaintiff had stated a

claim under TILA under section 226.17(e).  See also Vician v. Wells Fargo Home

Mortgage, No. 05-144, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) (plaintiffs stated a

TILA claim when lender force-placed fire and hazard insurance not authorized by the

mortgage documents).

Applying the reasoning of Travis to the facts of this case, and in light of my

conclusion that Plaintiff has stated a claim that Defendants obtained flood insurance in

breach of the mortgage, it is plausible that the inaccuracy of the original disclosures was

caused by Defendants' departure from the mortgage documentation.  Thus, Plaintiffs have

stated a claim that they were entitled to new disclosures under TILA.

Based on the facts alleged in the Complaint and the caselaw construing TILA and

its governing regulations, I conclude that Plaintiff's TILA claim survives the motion to

dismiss.  I must now determine whether the TILA claim is timely.

### 2.     TILA Statute of Limitations

Defendants also allege that Plaintiff's TILA claim is time-barred.  Both sides agree that a TILA violation is subject to a one-year statute of limitations.  <u>See</u> Docs. 13 at 15, 24 at 18; 15 U.S.C. § 1640(e).  They do not agree, however, when the limitations period began to run.  Defendants focus on the date of the loan's origination, July 28, 2009, and argue that the alleged violation was the failure to disclose the flood insurance requirements of the loan.  <u>See</u> Doc. 13 at 15.  Plaintiff argues that the TILA violation occurred when Defendants sent the demand for increased flood insurance on July 29, 2010, making his filing of suit on October 1, 2010, timely.  <u>See</u> Doc. 24 at 18.

Looking at the Complaint, Plaintiff's TILA claim is based on the change in flood insurance requirements and the alleged misrepresentation regarding those requirements. Plaintiff alleges that Defendant misrepresented the amount of flood coverage required, adversely changed the terms of the loan, and failed to provide proper notice.  <u>See</u> Compl. ¶¶ 39-40.  These actions arose when Defendants required the additional flood coverage, of which Plaintiff was not notified until July 29, 2010.  <u>See</u> Doc. 24 Exh. 2.

In <u>Hofstetter II</u>, the court distinguished between claims based on the initial disclosures and those based on the subsequent notices requiring additional flood insurance.  In the original Complaint in that case, the plaintiff's TILA claim was based solely on the initial disclosures and was therefore time-barred.  <u>See</u> <u>Hofstetter v. Chase Home Finance LLC</u>, No. 10-1313, 2010 WL 3259773, at *12 (N.D. Cal. Aug. 16, 2010)

("<u>Hofstetter I</u>").  The court revisited the issue after the plaintiff proposed amending the

complaint:

> The central reason why plaintiff's TILA claim was
> dismissed as time-barred in the August 2010 order was its
> apparent focus on the *initial* disclosures made by JPMorgan
> Chase Bank when the [home equity lines of credit] in
> question were consummated.  Plaintiff's revamped TILA
> claim now focuses upon *subsequent* disclosures made by
> JPMorgan Chase Bank years after the loans were originated
> that supposedly "changed the terms" of the mortgages held by
> [the plaintiffs].

<u>Hofstetter II</u>, 2010 WL 4606478, at *7 (emphasis in original) (granting leave to amend).

Here, because Plaintiff's claims involve the alleged change in loan terms and the

increase in flood coverage, which occurred only two months prior to the filing of the

complaint, I find that the TILA claim is timely.

Therefore, I make the following:

## <u>R E C O M M E N D A T I O N</u>

AND NOW, this     15th         day of April, 2011, upon consideration of the

Complaint (Doc. 1), Defendants' Motion to Dismiss (Doc. 13), the response (Doc. 24),

and reply (Doc. 28), IT IS RESPECTFULLY RECOMMENDED that the Motion be

GRANTED IN PART and DENIED IN PART.

To the extent Defendants seek dismissal of a separate claim for a breach of the

covenant of good faith and fair dealing (Fourth Claim for Relief), I recommend that the

Defendant's motion be GRANTED.  However, rather than requiring amendment, I

recommend that this claim be incorporated into the claim for breach of contract.

To the extent Defendants seek dismissal of Plaintiff's claims for violation of the

UTPCPL and fraud (Second and Third Claims for Relief), I recommend that the Motion

be GRANTED, and that these claims be dismissed because they are barred by the

economic loss doctrine.

In all other respects, I recommend that the Motion be DENIED.

The parties may file objections to this Report and Recommendation.  <u>See</u> Local

Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate

rights.


/S/ELIZABETH T. HEY

_____

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE