## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD M. WULF, JR. and KARYL RESNICK, as individuals and as representatives of the classes,<br><br>     Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, L.P.,<br><br>     Defendants. | Case No.:  2:10-cv-05176-MAM<br><br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION (JURY TRIAL DEMANDED)** |

Plaintiffs Richard M. Wulf, Jr. and Karyl Resnick ("Plaintiffs"), by and through their attorneys, and on behalf of themselves, the Putative Classes set forth below, and in the public interest, bring the following Complaint against Defendants Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC Servicing") (collectively, "Defendants").

### PRELIMINARY STATEMENT

1.     Plaintiffs and the Putative Class members currently have or formerly had loans or lines of credit with Defendants, secured by their residential property.  During the applicable statutory period, Defendants unfairly, unjustly, and unlawfully forced Plaintiffs and other members of the Putative Classes to purchase and maintain flood insurance for their property in amounts greater than required by law, greater than Defendants' financial interest in their property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents, without complying with disclosure and consent requirements under federal law, and without any reasonable basis or justification.

2.      Defendants unfairly, unjustly, and unlawfully required this excessive insurance coverage in bad faith, in order to steer business to BOA's captive insurance company, and to otherwise generate commissions, interest, fees, and other compensation for BOA and its affiliates.

3.      Based on Defendants' conduct as described herein, Plaintiffs assert a federal Truth in Lending Act ("TILA") claim on behalf of a Putative Nationwide TILA Class consisting of all persons who were required by BOA (or its agents or affiliates), on or after October 1, 2009, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of the improvements to their property, as a condition of any residential mortgage loan or home-equity line of credit secured by residential property in the United States, but who were not required to carry flood insurance coverage in such amount upon originating their mortgage loan or home-equity line of credit.

4.      In addition, Plaintiffs assert common law claims against Defendants for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs assert these common law claims on behalf of a Putative Nationwide Common Law Class consisting of all persons who were required by Defendants, during the applicable limitations period, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of the improvements to their property, as a condition of any residential mortgage loan or home-equity line of credit secured by residential property in

the United States, and whose mortgage agreement[1] defined the amount of flood insurance coverage required by the lender-in-interest to the mortgage by reference to specific coverage criteria other than the National Flood Insurance Program limit or the replacement cost value of the property.

5.    Plaintiffs and the Putative Classes seek monetary relief, injunctive relief, declaratory relief, penalties, and attorneys' fees and costs pursuant to the TILA and other authority for Defendants' unlawful conduct, as described herein.

## THE PARTIES

6.    Individual and representative Plaintiff Richard M. Wulf, Jr. ("Wulf"), resides in the County of Schuylkill, State of Pennsylvania.  Wulf is a member of each of the Putative Classes defined herein.

7.    Individual and representative Plaintiff Karyl Resnick ("Resnick") resides in Winthrop, Massachusetts.  Resnick is also a member of each of the Putative Classes defined herein.

8.    Defendant BOA is a national banking association headquartered in Charlotte, North Carolina.  BOA does business in the State of Pennsylvania and several other states throughout the country.

9.    Defendant BAC Servicing is a wholly owned subsidiary of BOA that services loans originated and purchased by BOA, including mortgage loans and lines of credit.  BAC Servicing is headquartered in Calabasas, California.

---

[1] For purposes of this class definition, the term "mortgage agreement" includes deeds of trust or other types of security instruments.

3

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction over Plaintiffs' TILA claim pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiffs' common law claims pursuant to 28 U.S.C. § 1367.  In addition, this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiffs and Defendants are citizens of different states, the amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of each of the Putative Classes.

11.     Venue is proper in the United States District Court, Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391.  Plaintiff Wulf resides in Pennsylvania, and Defendants regularly conduct business in the Eastern District of Pennsylvania.

## FACTUAL ALLEGATIONS

*Richard Wulf*

12.     On or about July 28, 2009, Plaintiff Wulf obtained a mortgage loan from Fulton Bank in the amount of $108,007.00, secured by a mortgage on his homestead.[2] The Mortgage stated that its terms and conditions "bind and benefit the successors and assigns of Lender and Borrower."

13.     As a condition precedent to obtaining this mortgage loan from Fulton Bank, Wulf was required to (and did) sign a "Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance for Participating Communities" ("Flood Hazard Notice").  This Flood Hazard Notice stated that Wulf's property was located in a "Special Hazard Flood Area" and that flood insurance was "mandatory" under federal law.  The Flood Hazard Notice further stated that the Fulton Bank would

_____

[2] This mortgage is the only lien on Wulf's homestead.

4

not make the loan unless Wulf purchased flood insurance in the amount described in the Flood Hazard Notice.

14.     Consistent with the National Flood Insurance Act ("NFIA") (42 U.S.C. 4001 *et. seq*.), the Flood Hazard Notice stated that the "flood insurance purchased must cover the *lowest of*: (1) the outstanding principal balance of the loan(s); or (2) the maximum amount of coverage allowed for the type of building under the NFIP [$250,000.00]; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan." (emphasis added)

15.     Wulf's Mortgage incorporated the Flood Hazard Notice, and provided that Wulf was required to insure the property "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD"). HUD's website, in turn, provides as follows:

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm     (last     visited April 27, 2010); *accord*, 24 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . . in an amount at least equal to . . . the outstanding balance of the mortgage").

16.     As agreed in his Flood Hazard Notice and Mortgage, Wulf obtained flood insurance coverage in the amount of $110,000.00 at the time the loan was originated. The cost of this insurance to Wulf was an annual premium payment of $1,016.00, which was made part of his escrow on the loan. Fulton Bank never indicated that this amount was in any way inadequate under federal law or his Mortgage.

17.     In or around September of 2009, Defendant BOA purchased Wulf's mortgage, succeeding Fulton Bank as the lender. Consistent with the provision in the

Mortgage that its terms "bind and benefit the successors and assigns of Lender and Borrower," Wulf continued to make payments to Defendants under the terms and conditions originally agreed upon with Fulton Bank, including escrow payments.

18.     On July 29, 2010, Defendants sent Wulf a form letter ("Demand for Increased Flood Coverage"), stating that his flood insurance coverage was "not adequate" under federal law and/or his Mortgage, and further stating that he was required to increase his flood insurance coverage by $103,703.00 (from $110,000 to more than $213,000). This Demand for Increased Flood Coverage also stated:

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property).

This language was inconsistent with Wulf's Flood Hazard Notice and Mortgage (as well as the NFIA), and conspicuously omitted to provide Wulf with a third option (as previously agreed) to insure the property to the outstanding principal balance of the loan. Moreover, Defendants did not explain why the amount of flood insurance Wulf had carried for the previous year was no longer adequate under federal law and/or the Mortgage.

19.     Defendants' representations in the Demand for Increased Flood Coverage were false. Neither federal law nor Wulf's Mortgage require him to maintain flood insurance in an amount greater than the principal balance of his mortgage loan, and his coverage was not inadequate under federal law or his Mortgage.

20.     Defendants knew or should have known that their representations were false, as evidenced by, *inter alia*, the following facts:

6

a) the plain language of the relevant loan and mortgage documents did not require flood insurance in excess of Wulf's principal balance;

b) the National Flood Insurance Act and its accompanying regulations do not require flood insurance in excess of a borrower's principal balance;

c) HUD does not require flood insurance in excess of a borrower's principal balance;

d) Fulton Bank did not require coverage in excess of Wulf's principal balance during the time that it held and serviced the mortgage;

e) Defendants held and serviced Wulf's mortgage for ten months, without claiming that Wulf's existing flood insurance was inadequate;

f) Defendants did not and cannot identify any changes in federal law, the mortgage documents, or the circumstances surrounding the loan that justified Defendants' representation that Wulf's coverage was suddenly "not adequate;"

g) Defendants' Demand for Increased Flood Coverage clearly deviated from the language of the Flood Hazard Notice, and fraudulently omitted to provide Wulf the option to maintain flood insurance in the amount of "the outstanding principal balance of the loan(s);" and

h) Defendants' Demand for Increased Flood Coverage used intentionally deceptive and confusing language that obscured and otherwise misrepresented federal legal requirements and the terms of Wulf's loan and mortgage documents.

21.     In the Demand for Increased Flood Coverage, Defendants further informed Wulf that if he did not obtain the additional coverage demanded by Defendants by September 16, 2010, (1) BAC Servicing would purchase such additional coverage for him "through agencies that are affiliates of Bank of America, N.A.", (2) "Bank of America, N.A. and its affiliates may receive a commission or other compensation in connection with obtaining this coverage", and (3) the "premium may be more expensive and will likely provide less coverage" than insurance he could obtain by himself. Defendants also suggested that Wulf contact BOA's affiliate, Banc of America Insurance

Services, Inc., to purchase the additional insurance and avoid having the insurance force placed upon him.

22.    Relying on these representations (including Defendants' representation that his flood insurance was "not adequate"), and having no choice other than to risk Defendants purchasing even more expensive insurance for him, Wulf obtained additional flood insurance to match his hazard insurance, at an additional cost of $332 per year. Wulf obtained this additional flood insurance on or about August 27, 2010.  But for Defendants' Demand for Increased Flood Coverage, Wulf never would have purchased such additional flood insurance coverage and never would have incurred such expense.

23.    On September 21, 2010, *after* Wulf already had obtained this increased flood insurance coverage, Defendants sent him a notice ("Notice of Force Placement") indicating that (1) BAC Servicing had purchased an additional $103,703 in flood insurance coverage for him anyway, and (2) "the cost of that policy will be charged to you and may become an additional debt secured by your mortgage or deed of trust and/or escrowed."  This Notice of Force Placement acknowledged that "[w]e understand that you do have some flood insurance on the Property," but claimed that "based on our records, it is not adequate."   Defendants claimed in the Notice of Force-Placement that "The Lender-Placed additional insurance will protect our interest in the Property." However, Defendants' interest in the property already was fully protected by Wulf's initial flood insurance policy and was more than protected by the additional coverage that Wulf purchased.  Defendants have never explained why it is necessary to require Wulf or other borrowers to obtain flood insurance coverage in amounts beyond Defendants' financial risk.

***Karyl Resnick***

24.     On April 14, 2005, Plaintiff Resnick entered into a Home Equity Line of Credit Agreement ("HELOC Agreement") with "Fleet National Bank, a Bank of America Company."   BOA is the lender-in-interest to this HELOC Agreement, and BAC Servicing services the HELOC Agreement of behalf of BOA.   Resnick's maximum available credit (also known as Maximum Principal Sum) under her credit line is $75,000.

25.     Resnick's HELOC Agreement is secured by an Open-End Mortgage on her property at 80 Cross Street in Winthrop, Massachusetts (the "Cross Street Property"). She does not have any other mortgages or liens on the Cross Street Property.

26.     The house on the Cross Street Property is located in a SFHA. Accordingly, federal law requires flood insurance on the house, for the duration of her line of credit agreement, in an amount equal to "the total amount of the line, the value of the improved property or the maximum amount of flood insurance coverage available, ***whichever is less***."   *Hofstetter v. Chase Home Finance, LLC*, No. 10-1313, 2010 WL 3259773, at *7-10 (N.D.Cal. Aug. 16, 2010) ("*Hofstetter I*") (emphasis added); *accord*, *Hofstetter v. Chase Home Finance, LLC*, -- F. Supp. 2d --, 2010 WL 4606478, at *9-10 (N.D.Cal. Oct. 29, 2010) ("*Hofstetter II*").

27.     Consistent with this federal mandate, Bank of America required Resnick to maintain $75,000 worth of flood insurance on the Cross Street Property upon opening her credit line, and Resnick did so.   This amount of flood insurance coverage fully satisfied federal flood insurance requirements, and also fulfilled Resnick's coverage

9

requirements under the terms of her Mortgage.  The pertinent provision of Resnick's

Mortgage provides:

> **4.    Hazard and Flood Insurance.**    Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require. Borrower shall maintain coverage in an amount equal to the *__smallest of__*: (a) the amount of any obligation having priority over this Mortgage, plus the Maximum Principal Sum; or (b) the maximum insurable value of the Property . . . ; or (c) such amount as may be required by applicable law.  If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood. (emphasis added)

28.    Resnick has continuously maintained flood insurance on the Cross Street

Property in an amount sufficient to cover her Maximum Principal Sum and satisfy

applicable law and the terms of her Mortgage.  However, on or about May 3, 2010, Bank

of America sent Resnick an "Insurance Deficiency Notice."

29.    The following month, on or about June 14, 2010, Bank of America sent

Resnick another notice ("Notice of Flood Insurance Coverage").  In this Notice, Bank of

America acknowledged that Resnick already had a flood insurance policy in place on the

property, but stated:

> After a comparison of the amount of flood insurance on the current policy to the replacement cost value of the most recent hazard policy on file, we have determined that additional flood insurance coverage is required. . . .

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property).

30.     This Notice of Flood Insurance Coverage further stated that Bank of America had purchased additional flood insurance coverage for Resnick's property in the amount of $175,000 (bringing her total coverage amount to $250,000), and indicated that Bank of America would charge her $459.16 for the cost of this additional insurance.  In this letter, Bank of America also noted that "our licensed affiliate insurance agency may have received a commission for placing this insurance."

31.     Bank of America had no legitimate basis for force-placing this additional flood insurance coverage on Resnick's property, at her expense.  Although Bank of America asserted in the Notice of Flood Insurance Coverage that "additional flood insurance is required[,]" the additional insurance that it purchased was not required under federal law or the terms of Resnick's Mortgage, and Bank of America was not authorized to force-place this additional insurance.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs assert their TILA claim in Count 1 on behalf of a Putative Nationwide TILA Class defined as follows:

> **Proposed Nationwide TILA Class:**  All persons who were required by BOA (or its agents or affiliates), on or after October 1, 2009, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of the improvements to their property, as a condition of any residential mortgage loan or home-equity line of credit secured by residential property in the United States, but who were not required to carry flood insurance coverage in such amount upon originating their mortgage loan or home-equity line of credit.

11

33.     Plaintiffs assert their common claims in Count 2 (for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing) on behalf of a Putative Nationwide Common Law Class defined as follows:

> **Proposed Nationwide Common Law Class:** All persons who were required by Defendants, during the applicable limitations period, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of the improvements to their property, as a condition of any residential mortgage loan or home-equity line of credit secured by residential property in the United States, and whose mortgage agreement defined the amount of flood insurance coverage required by the lender-in-interest to the mortgage by reference to specific coverage criteria other than the National Flood Insurance Program limit or the replacement cost value of the property.

34.     <u>Numerosity</u>:   The Putative Classes are so numerous that joinder of all Class members is impracticable.   Plaintiffs are informed and believe that during the relevant time period, thousands of Defendants' customers satisfy the definition of the Putative Classes.

35.     <u>Typicality</u>:     Plaintiffs' claims are typical of the members of the Putative Classes.  Plaintiffs are informed and believe that their loan and mortgage documents were typical of those of other Putative Class members, that the flood insurance notices they received were typical of those received by other Putative Class members, that Defendants treated them consistent with other Putative Class members in accordance with Defendants' policies and practices, and that it was typical for Defendants to require borrowers to purchase and maintain flood insurance in an amount greater than that

required by law or contract, and greater than required to insure the amount of funds extended, without any reasonable basis or justification and without proper notice of such requirements in the relevant loan and mortgage documents.

36.    Adequacy:    Plaintiffs will fairly and adequately protect the interests of the Putative Classes, and have retained counsel experienced in complex class action litigation.

37.    Commonality: Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a.  Whether federal law requires Defendants' customers to purchase and/or maintain flood insurance in amounts greater than necessary to secure the amount of funds extended under a home loan or line of credit;

b.  Whether Defendants have a pervasive policy and practice of misrepresenting to their customers that federal law requires flood insurance or additional flood insurance on loans or lines of credit for which flood insurance or additional flood insurance is not required by law;

c.  Whether the mortgage documents relied upon by Defendants clearly, conspicuously, adequately, and meaningfully disclose the amount of flood insurance that is required as a condition of credit, and authorize Defendants to demand and/or force-place flood insurance in amounts greater than required by federal law and greater than necessary to secure the amount of funds extended;

d.  Whether Defendants' standard flood insurance notice letters are false, deceptive, and/or misleading;

e.  Whether BOA violated the TILA by failing to accurately disclose customers' flood insurance requirements, by changing its flood insurance requirements without proper notice and consent, and/or by failing to make proper finance charge disclosures or other disclosures in connection with flood insurance;

f.  Whether Defendants owe their customers a duty of good faith and fair dealing and/or have an obligation to avoid creating situations where properties are over-insured, and if so, whether Defendants breached this duty and/or obligation by, *inter alia*, demanding flood insurance in amounts greater than necessary to secure the amount of funds extended and greater than required by federal law;

g.  Whether Defendants breached their mortgage agreements with customers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed in such mortgage agreements;

h.  The appropriateness and form of any equitable relief reversing charges for excessive flood insurance coverage, allowing customers to close loans or credit lines without first paying premiums for flood insurance that were not necessary or required by law, ordering Defendants to cease and desist from such conduct in the future, or any other declaratory or injunctive relief;

i.  The appropriateness and proper measure of monetary and other damages sustained by the Putative Classes; and

j.  The appropriateness and proper measure of any penalties, fines, or other remedies.

38.  This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

39.  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary flood insurance premiums and related charges that are readily calculable from Defendants' records and other class-wide

14

evidence. Members of the Putative Classes do not have an interest in pursuing separate individual actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

40.     Plaintiffs intend to send notice to all members of the Putative Classes to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendants' records.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE TRUTH IN LENDING ACT
### 15 U.S.C. § 1601 *et seq.*

41.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

42.     Residential mortgage loan agreements and line of credit agreements are subject to the disclosure requirements of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

43.     BOA is a "creditor" as defined by the TILA.

44.     BOA is required to timely disclose all finance charges, other charges, and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

45.     BOA is required to make these disclosures clearly and conspicuously.

46.     BOA is further required to accurately and fully disclose the terms of the legal obligation between the parties.

47.     BOA violated these and other requirements under the TILA by (i) failing to timely, clearly, conspicuously, accurately, fully, and meaningfully disclose its flood insurance requirements; and (ii) misrepresenting to Plaintiffs and other Nationwide TILA Class members that they were obligated by federal law and/or their mortgages to purchase flood insurance in amounts greater than necessary to secure the amount of funds extended.

48.     In addition, BOA violated the TILA by, *inter alia*, (i) adversely changing the terms of mortgage loans or credit lines after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect its interest in the property; and (ii) failing to provide proper notice, after origination, that BOA was amending the terms of loans or credit lines as described in the relevant mortgage documents.

49.     The TILA violations set forth above occurred within one year of the commencement of this action.  To the extent that the violations described above occurred earlier, Plaintiffs did not discover and did not have a reasonable opportunity to discover BOA's violations until less than one year before this action commenced.   Prior to this time, Plaintiffs had no reason or opportunity to complain about BOA's TILA violations because it was not yet apparent that BOA's disclosures were incomplete, inaccurate, and misleading.

50.     Plaintiffs' TILA claim is timely.  The statute of limitations on Plaintiffs' TILA claim did not begin to run and/or was equitably tolled until such time that they had a reasonable opportunity to discover BOA's TILA violations and complain about such violations.  It would be manifestly unjust and inconsistent with the purposes of the TILA to apply and enforce an earlier accrual date for Plaintiffs' TILA claim.

51.     BOA systematically and pervasively engaged in similar violations of the TILA to the detriment of other members of the Putative Nationwide TILA Class.

52.     Plaintiffs and the Putative Nationwide TILA Class have been injured and have suffered a monetary losses as a result of BOA's violations of the TILA.

53.     As a result of BOA's violations, Plaintiffs and the Putative Nationwide TILA Class are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

54.     Plaintiff and the Putative Nationwide TILA Class also are entitled to recovery of attorneys' fees and costs to be paid by BOA, as provided by 15 U.S.C. § 1640(a)(3).

<u>**SECOND CLAIM FOR RELIEF**</u>
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING/**
**BREACH OF CONTRACT**

55.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

56.     BOA is the lender-in-interest to Plaintiffs' Mortgages and is bound by the terms of their Mortgages.

57.     Plaintiffs' Mortgages do not require flood insurance in an amount greater than federal requirements or the amount of funds extended to them.

58.     Defendants breached the terms of Plaintiffs' Mortgages by requiring Plaintiffs to maintain flood insurance in excess of the amount required under their Mortgages, and by force-placing flood insurance in excess of the amount required under their Mortgages.

59.     Defendants also breached the implied covenant of good faith and fair dealing inherent in Plaintiffs' Mortgage Agreements.

60.     Defendants owed Plaintiffs and the Putative Nationwide Common Law Class a duty of good faith and fair dealing, by virtue of Defendants' contractual relationship with Plaintiffs and the Putative Nationwide Common Law Class members.

61.     Defendants breached this duty by, among other things: (1) misrepresenting both federal requirements and contractual requirements regarding flood insurance, (2) demanding and/or force-placing flood insurance coverage in excess of that the amount required by federal law or the relevant loan and mortgage documents, and in excess of that the amount required to protect Defendants' legitimate financial interests; (3) unreasonably exercising in bad faith any purported discretionary authority Defendants claim they were afforded under the loan and mortgage documents, and (4) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant contracts.

62.     Defendants willfully engaged in the foregoing conduct in bad faith and with fraudulent intent, for the purpose of (i) unfairly and unconscionably maximizing revenue from such customers; (ii) generating commissions, interest, fees, and "other compensation" for BOA and its affiliates; (iii) providing a ready-made customer base for BOA's captive insurance company; (iv) gaining unwarranted contractual and legal

advantages; and (v) depriving Plaintiffs and other Putative Nationwide Common Law Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the funds extended to them.

63.     Defendants' breaches were willful and not the result of mistake or inadvertence.  On information and belief, Defendants systematically and pervasively required other members of the Putative Nationwide Common Law Class to obtain flood insurance in excess of the amount required under their mortgage agreements and in excess of the amount that Defendants could fairly and reasonably demand in good faith.

64.     As a result of Defendants' breaches of contract and breaches of the covenant of good faith and fair dealing, Plaintiffs and the Putative Nationwide Common Law Class have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, escrow charges, interest payments, and/or other charges, and unnecessary burdens on their property rights.

65.     Plaintiffs and the Putative Nationwide Common Law Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Putative Classes, pray for relief as follows:

A.      Determining that this action may proceed as a class action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

B.      Designating Plaintiffs' counsel as counsel for the Putative Classes;

C.    Issuing proper notice to the Putative Classes at Defendants' expense;

D.    Declaring that Defendants committed multiple, separate violations of the TILA;

E.    Declaring that Defendants' conduct violated the terms of its contracts and breached the covenant of good faith and fair dealing;

F.    Awarding appropriate equitable relief, including but not limited to restitution and an injunction requiring Defendants to reverse all unlawful, unfair, or otherwise improper charges for insurance coverage, allowing customers to close loans or credit lines without first paying premiums for unnecessary and excessive flood insurance, and cease and desist from engaging in further unlawful conduct in the future;

G.    Awarding actual damages, statutory damages, penalties, and interest;

H.    Awarding reasonable attorneys' fees and costs as provided by the TILA and other authority; and

I.    Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

66.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Class demand a trial by jury.

Dated: 7/6/2011

Respectfully submitted,

NICHOLS KASTER PLLP

Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice

CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS  FOR  PLAINTIFFS  AND
THE PUTATIVE CLASSES

21