# Exhibit 1

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Lee M. Berger and Alice A. Berger,<br>Individually and on Behalf of All<br>Other Persons Similarly Situated, | )<br>)<br>) | CIVIL ACTION NO. 10-11583 |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| | ) | |
| Bank of America, N.A.; and<br>BAC Home Loans Servicing, LP, | )<br>) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

**INTRODUCTION**

1.     This action is brought by the Plaintiffs, on behalf of themselves and all others similarly situated, to obtain monetary and other appropriate relief for the damages sustained by the Plaintiffs and the members of the Class as a result of Defendants' nationwide practice of forcing mortgagors to maintain more hazard and flood insurance coverage than is required by their mortgage agreements.

2.     Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP service and own millions of loans nationwide which are secured by real estate mortgages. The mortgages require mortgagors to maintain specific levels of

insurance against hazards such as fire. In addition, mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" also require mortgagors to maintain specific levels of flood insurance. Defendants have established and enforce a nationwide policy that requires and compels the mortgagors to maintain greater hazard and flood insurance coverage than required by their mortgages. This policy is directly contrary to the mortgagors' contractual obligations under the mortgages to maintain the hazard and, in some instances, flood insurance coverage in the amounts specified in the mortgages, and contrary to the Defendants' contractual rights under the mortgages to require the mortgagors to maintain the hazard and, in some instances, flood insurance coverage in the amounts specified in the mortgages.

3. Defendants enforce their insurance coverage requirement by demanding that the mortgagors obtain the amount of hazard and, in some instances, flood insurance coverage "required" by the Defendants. If the mortgagors fail to comply with the Defendants' demand, the Defendants purchase hazard or flood insurance coverage so that the total insurance coverage on the real estate will meet the Defendants' insurance coverage "requirements." In doing so, the Defendants cause the insurance coverage on the real estate to be greater than required by the mortgage agreements. Defendants then charge the mortgagors for

the cost of that additional insurance by either deducting the insurance premiums from the escrow accounts maintained by the mortgagors with the Defendants or by increasing the mortgagors' monthly mortgage payments.

4. Defendants or their corporate subsidiaries or affiliates profit from these insurance transactions because Defendants often purchase the insurance from Defendants' own affiliated insurance companies and/or place the insurance through Defendants' own affiliated insurance brokers. The Defendants' affiliated insurance brokers receive commissions on these insurance transactions and the Defendants' affiliated insurance companies receive the insurance premiums involuntarily paid by the mortgagors.

5. The Defendants' conduct, as described in detail below, constitutes breaches of the mortgage contracts. Plaintiffs seek damages for breach of contract for themselves and all other mortgagors who have had more hazard or flood insurance coverage purchased for them by Defendants than is required by their mortgage agreements.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because the aggregated amount in controversy exceeds $5,000,000 and Plaintiffs are citizens of a State different from Defendants.

7.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) and (c). A substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

8.     Plaintiffs Lee M. Berger and Alice A. Berger ("Plaintiffs") are residents of the Village of Buzzard's Bay in the Town of Bourne, Massachusetts. Plaintiffs are the obligors on a loan secured by a mortgage on their home in Buzzard's Bay that is serviced by Defendant BAC Home Loans Servicing, LP and, upon information and belief, is owned by Defendant Bank of America, N.A.

9.     Defendant Bank of America, N.A. is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Bank of America, N.A. is a national bank. Bank of America, N.A., directly and/or through its subsidiaries, owns and services loans secured by mortgages on real estate located throughout the United States, including Massachusetts. Bank of America, N.A. is located in, conducts business in, and engages in commerce in the Commonwealth of Massachusetts. Defendant Bank of America, N.A., is a subsidiary of Bank of America Corporation, the largest bank holding company in the United States.

10.     Defendant BAC Home Loans Servicing, LP ("BAC Home Loans"), formerly known as Countrywide Home Loans Servicing, LP, is a wholly owned

subsidiary of Defendant Bank of America, N.A.  It is a Texas limited partnership with its principal place of business in Calabasas, California.  BAC Home Loans owns and services loans secured by mortgages on real estate located throughout the United States, including Massachusetts.  BAC Home Loans conducts business in and engages in commerce in the Commonwealth of Massachusetts.

## STATEMENT OF FACTS

### <u>Facts Regarding The Defendants' Nationwide Insurance Coverage Requirements</u>

11.    Defendants have a nationwide policy and practice of requiring mortgagors to maintain hazard insurance coverage in an amount equal to the lesser of: 100% of the insurable value of the improvements on the mortgaged property or the unpaid principal balance of the loan.  <u>However</u>, if the unpaid principal balance on the loan is less than 80% of the insurable value of the improvements, Defendants require hazard insurance coverage equal to at least 80% of the insurable value of the improvements.  That policy and practice of the Defendants is hereinafter sometimes referred to as "Defendants' Hazard Insurance Coverage Requirement."   Defendants apply and enforce Defendants' Hazard Insurance Coverage Requirement even if it exceeds the mortgagor's hazard insurance coverage obligations and the Defendants' hazard insurance coverage rights under the mortgage agreements.

12.     Defendants also have a nationwide policy and practice of requiring mortgagors of mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" to maintain flood insurance coverage in an amount equal to the lesser of 100% of the replacement cost of the insured structure or the maximum flood insurance coverage available under the National Flood Insurance Act of 1968, as amended by, *inter alia*, the National Flood Insurance Reform Act of 1994, 42 U.S.C. §4001, et seq. (the "Flood Insurance Act") (currently $250,000 for residential properties and $500,000 for commercial properties).     That policy and practice of the Defendants is hereinafter sometimes referred to as "Defendants' Flood Insurance Coverage Requirement."     The Defendants apply and enforce Defendants' Flood Insurance Coverage Requirement even if it exceeds the mortgagor's flood insurance coverage obligations and the Defendants' flood insurance rights under the mortgage agreements.

13.     The Flood Insurance Act, at 42 U.S.C. §4012a(b)(1), prohibits federally regulated banks from issuing loans secured by mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" unless flood insurance coverage is maintained on the real estate "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of [flood insurance] coverage made available under the

[Flood Insurance] Act with respect to the particular type of property [currently $250,000 for residential properties and $500,000 for commercial properties], *whichever is less*" (emphasis added). The Flood Insurance Act neither requires, nor permits the Defendants to require, mortgagors to maintain greater flood insurance coverage than mandated by the Flood Insurance Act. Despite this fact, Defendants' Flood Insurance Coverage Requirement compels the Plaintiffs and those members of the Class (defined below) whose loans are secured by mortgages on real estate located in geographic areas designated by the United States government as having "special flood hazards" to maintain greater flood insurance coverage than required by the Flood Insurance Act.

14. Defendants enforce Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement by demanding that the mortgagors obtain the amount of hazard and, in some instances, flood insurance coverage "required" by the Defendants. If the mortgagors fail to comply with the Defendants' demand, the Defendants purchase hazard or flood insurance coverage so that the total insurance coverage on the real estate will meet Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement. Defendants then charge the mortgagors for the cost of that additional insurance by either deducting the insurance premiums from the escrow accounts maintained by the mortgagors with

the Defendants or by increasing the mortgagors' monthly mortgage payments.

15.     Defendants or their corporate subsidiaries or affiliates profit from these insurance transactions because Defendants often purchase the insurance from Defendants' own affiliated insurance companies and/or place the insurance through Defendants' own affiliated insurance brokers.     The Defendants' affiliated insurance brokers receive commissions on these insurance transactions and the Defendants' affiliated insurance companies receive the insurance premiums involuntarily paid by the mortgagors.

## Facts Regarding the Defendants' Imposition of Their Insurance Coverage Requirements on the Plaintiffs

16.     On August 18, 2003, Plaintiffs borrowed $130,000 from Fleet National Bank ("the Loan").  The Loan was documented by a promissory note (the "Note"), which was secured by a mortgage agreement ("the Mortgage Agreement" – attached hereto as Exhibit 1) providing Fleet National Bank with a security interest in Plaintiffs' home in Buzzard's Bay, Massachusetts (the "Property").  The Mortgage Agreement is a contract that governs the rights and obligations of the parties to the contract.

17.     Fleet National Bank was subsequently acquired by and merged into Defendant Bank of America, N.A.  Upon information and belief, Defendant Bank of America, N.A. now owns the Note and the security interest established in the

Mortgage Agreement.  Upon information and belief, Defendant Bank of America, N.A. is the successor and assignee of Fleet National Bank of the Note and the Mortgage Agreement.

18.    The Loan and the Mortgage Agreement are now serviced by Defendant BAC Home Loans.  Plaintiffs thus make their monthly loan payments to BAC Home Loans and they communicate exclusively with BAC Home Loans with respect to all matters concerning the Loan and the Mortgage Agreement.  In all of its actions described herein, BAC Home Loans acted on its own behalf and as the duly authorized agent of Defendant Bank of America, N.A. or other owner or assignee of the Note and the Mortgage Agreement.  Defendants are contractually obligated to service the Loan and the Mortgage Agreement pursuant to the terms of the Note and the Mortgage Agreement.

19.    The Mortgage Agreement provides that the Plaintiffs, as mortgagors, must maintain specified hazard and flood insurance on the real estate which is the subject of the Mortgage Agreement.   The Mortgage Agreement provides as follows:

> **4.    Hazard and Flood Insurance….**Borrower shall maintain [hazard insurance] coverage in an amount equal to *the smallest of*: (a) the amount of any obligation having priority over this Mortgage, plus one hundred ten percent (110%) of the unpaid balance of principal and interest on the Note; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) the maximum amount permitted by applicable law.  If the Property is located in an area identified by federal officials as having special flood hazards and where flood

insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood. (emphasis added)

20.     The Property is located in a geographic area that the United States government has designated as having "special flood hazards."  Accordingly, pursuant to the above quoted provision of the Mortgage Agreement, Plaintiffs were required to maintain flood insurance coverage for the Property in an amount equal to *the smallest of* 110% of the unpaid balance of principal and interest on the Note (there being no other obligations having priority over the Mortgage) or the $250,000 maximum flood insurance available under the Flood Insurance Act.

21.     As of July 9, 2010, the outstanding balance owed by the Plaintiffs on the Loan was $99,377.  Accordingly, Plaintiffs were required under the Mortgage Agreement to maintain $109,271 ($99,377.19 x 110% = $109,271) of flood insurance coverage on the Property (since that amount is less than the $250,000 flood insurance coverage available under the Flood Insurance Act).

22.     At all times relevant hereto the Plaintiffs maintained $143,000 in flood insurance coverage on the Property, which was substantially greater than 110% of the outstanding balance on the Loan and hence was substantially greater than the amount of flood insurance coverage that the Plaintiffs were contractually obligated to maintain on the Property pursuant to the Mortgage Agreement.

23.     In a letter dated May 6, 2010, entitled "Important Insurance Information Needed" (attached hereto as Exhibit 2), BAC Home Loans requested

that Plaintiffs provide BAC Home Loans with a copy of Plaintiffs' homeowner's insurance policy. BAC Home Loans enclosed with that letter a document entitled "BAC Home Loans Hazard Insurance Requirements" (attached hereto as Exhibit 3). In this document BAC Home Loans sets forth Defendants' Hazard Insurance Coverage Requirement described above. Specifically, the document says:

> *In order to protect the dwelling structure, BAC Home Loans requires that you maintain hazard insurance. Below are the minimum requirements:*

\* \* \*

- Must … be in an amount equal to the lower of:

    - 100% of the insurable value of the improvements as established by the insurer or;

    - The unpaid principal balance of the loan

    - Not withstanding [*sic*] the foregoing, if the unpaid principal balance is less than 80% of the insurable value of the improvements, the coverage amount must be at least 80% of the insurable value

\* \* \*

(Italics in original)

24.     BAC Home Loans' May 6, 2010 letter further stated that if Plaintiffs did not present proof of sufficient hazard insurance coverage on the Property, BAC Home Loans would purchase hazard insurance for the Property and deduct the cost of that insurance from Plaintiffs' escrow account with BAC Home Loans. The letter also states that this new insurance "could be more expensive than [Plaintiffs']

prior policy and will not provide the same coverage." Finally, BAC Home Loans stated: "The insurance may be obtained from an affiliated insurer by our licensed affiliated insurance agency and a commission may be received." Thus, as previously noted, BAC Home Loans or its affiliates could have profited from BAC Home Loans' involuntary purchase of this insurance both if its affiliated broker made a commission from the sale of the insurance and if its affiliated insurer received the premiums charged for the insurance coverage.

25. After receiving BAC Home Loans' May 6, 2010 letter, Plaintiffs arranged for their insurance agency to forward proof of their hazard and flood insurance coverage on the Property to BAC Home Loans. Those documents evidenced that Plaintiffs had in force a hazard insurance policy which insured the Property from April 22, 2010 through April 21, 2011, in the amount of $374,000. Those documents also evidenced that Plaintiffs had in force a flood insurance policy which insured the Property from December 15, 2009 through December 15, 2010, in the amount of $143,000.

26. Plaintiffs also received a second letter from BAC Homes regarding hazard insurance coverage on the Property, dated May 20, 2010. It was similar to the May 6, 2010 letter described above. Enclosed with that letter was another copy of the document entitled "BAC Home Loans Hazard Insurance Requirements" described above.

27.     Thereafter, BAC Home Loans sent Plaintiffs a document entitled "Second Notice of Flood Insurance Requirement," dated June 27, 2010 (attached hereto as Exhibit 4) (the "Flood Insurance Notice").  In the Flood Insurance Notice BAC Home Loans set forth the previously described Defendants' Flood Insurance Coverage Requirement as follows:

> BAC Home Loans requires flood insurance coverage that is equal to 100% of the replacement cost of the structure based on the lesser of the current amount of hazard insurance for the property, or the maximum available coverage required by the National Flood Insurance Reform Act of 1994 (the Act), which is currently $250,000 for residential and $500,000 for commercial properties.

28.     The Flood Insurance Notice also stated that "a comparison of the amount of flood insurance coverage to the current amount of hazard insurance coverage determined that additional flood insurance is required."

29.     The Flood Insurance Notice further stated that if Plaintiffs did not obtain the additional flood insurance coverage required by Defendants' Flood Insurance Coverage Requirement, BAC Home Loans would purchase $107,000 additional flood insurance on the Property[1] and BAC Home Loans would then deduct the annual insurance premium of $280.88 for that additional flood insurance from Plaintiffs' escrow account.

---

[1]  While not explained in the letter, it is apparent that BAC Home Loans arrived at that $107,000 figure because the amount of flood insurance already maintained by the Plaintiff, $143,000, plus that $107,000, equals the $250,000 maximum available under the Flood Insurance Act.

30.    As with hazard insurance, BAC Home Loans or its affiliates would profit from the placing of the flood insurance.  As the June 27, 2010 letter states, "Please note that our licensed affiliated insurance agency may receive a commission for placing this insurance."

31.    On July 20, 2010, Plaintiffs wrote to BAC Home Loans, again providing documentation that they maintained $143,000 of flood insurance coverage on the Property, which was substantially more flood insurance than was required by the Mortgage Agreement.

32.    In a letter dated July 22, 2010  entitled "Notice of Flood Insurance Coverage" (the "Flood Insurance Coverage Notice") (attached hereto as Exhibit 5) BAC Home Loans stated to Plaintiffs that "we have insured your property, as required by the terms of your mortgage and/or federal law (42USC 4012a, Sec. 102e)."  Specifically, the Notice advised that BAC Home Loans had purchased an additional $107,000 in flood insurance coverage for the Property and that it would charge the insurance premium of $280.88 for that coverage to Plaintiffs' escrow account (which it subsequently did).

33.    BAC Home Loans' purchase of the additional $107,000 in flood insurance coverage for the Property, at Plaintiffs' expense, was neither required by, nor permitted by, the Mortgage Agreement.  As demonstrated above, the Mortgage Agreement requires the Plaintiffs to maintain flood insurance equal to 110% of the

$99,377 outstanding balance of the Loan, which equals $109,271. Accordingly, the $143,000 in flood insurance coverage that the Plaintiffs had maintained on the Property more than satisfied their flood insurance coverage obligation under the Mortgage Agreement and more than fulfilled the Defendants' flood insurance coverage rights under the Mortgage Agreement.

34. BAC Home Loans' purchase of the additional $107,000 in flood insurance coverage for the Property, at Plaintiffs' expense, was also neither required by, nor permitted by, the Flood Insurance Act. As explained above, the Flood Insurance Act requires the Defendants to require the Plaintiffs to maintain "flood insurance in an amount equal to the outstanding principal balance of the loan or the maximum limit of [flood insurance] coverage made available under the [Flood Insurance] Act with respect to the particular type of property [currently $250,000 for residential properties], *whichever is less*." (emphasis added). 42 U.S.C. §4012a(b)(1). Since the outstanding balance on the Loan was $99,377, the Flood Insurance Act required the Defendants to require the Plaintiffs to maintain $99,377 of flood insurance on the Property. The Flood Insurance Act neither requires, nor permits, the Defendants to require mortgagors to maintain greater flood insurance coverage than mandated by the Flood Insurance Act.

35. As a direct result of Defendants' conduct described herein, in breach of the Mortgage Agreement, Plaintiffs have suffered, and without relief from this

Court will continue to suffer, damages in the form of premiums for flood insurance on the Property that they were not required to maintain under the Mortgage Agreement.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action on behalf of themselves and all other persons or entities in the United States:

a) who are or were obligors on loans that are or were owned or serviced by either or both of the Defendants; and

b) which loans are or were secured by mortgage agreements[2] that are or were owned or serviced by either or both of the Defendants; and

c) which mortgage agreements required hazard or flood insurance coverage in an amount that was related to the amount of the outstanding balance of the loan – for example, in the amount of the outstanding balance of the loan or a percentage of the outstanding balance of the loan; and

d) for whom Defendants purchased and charged the cost of hazard or flood insurance coverage in excess of the coverage amounts required by the mortgage agreements.

---

[2] The term "mortgage agreements" includes deeds of trust for States in which such instruments are used in a similar manner to mortgage agreements.

37.   All of the persons or entities described in the preceding paragraph are hereinafter referred to as "the Class," "Class Members" or the "Members of the Class."

38.   As Defendants state and admit in their letters and notices to Plaintiffs, the Defendants' conduct with respect to the Plaintiffs, as described herein, was consistent with and pursuant to their uniform, nationwide policy and practice to maintain and enforce Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement.

39.   The Members of the Class are so numerous that joinder of all members is not only impracticable, it is impossible.  Defendants own and service millions of loans secured by real estate mortgages throughout the United States.

40.    Plaintiffs' claims are typical of the claims of the Members of the Class because, like Plaintiffs, each Class Member was forced by the Defendants to pay for more insurance coverage than the Class Member's mortgage agreement required.

41.   Plaintiffs will fairly and adequately protect the interests of the Members of the Class. They have retained counsel highly competent and experienced in class action litigation.

42.   Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual members of

the Class.  Among the questions of law and fact common to the Class are:

(a)    whether Defendants could require Members of the Class to maintain insurance in excess of what was required by their mortgage agreements;

(b)    whether Defendants breached the mortgage agreements of Plaintiffs and the Class by purchasing insurance coverage for Plaintiffs and the Class in excess of what was required by their mortgage agreements;

(c)    the proper measure of damages.

43.    The legal question of whether Defendants' conduct of purchasing, and charging the mortgagor for the cost of, hazard or flood insurance coverage in excess of what was required by their mortgage agreements breached the underlying mortgage agreements of Plaintiffs and Class Members is a question of basic contract law that would be the same under the laws of each State in which Class Members reside.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Furthermore, while the damages that have been suffered by, and that will continue to be suffered by, individual Class members are not insignificant, the expense and burden of individual litigation would make it impossible for Members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.  The Members of the Class can be identified from Defendants'

business records.

45.     The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members which would establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual Members of the Class could as a practical matter be dispositive of the interests of the other Class Members not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

## COUNT I – BREACH OF CONTRACT

46.     Plaintiffs incorporate the above paragraphs by reference.

47.     The mortgage agreements of Plaintiffs and the Class are binding contracts setting out the maximum amount of hazard and flood insurance that Plaintiffs and the Class were required to maintain.

48.     By forcing Plaintiffs and Class Members to buy hazard or flood insurance coverage in excess of the coverage required by their mortgage agreements, Defendants violated and breached the mortgage agreements.

49.     As a direct result of Defendants' breach of contract, Plaintiffs and the Class have been damaged.

50.     Defendants are liable to Plaintiffs and the Class Members for the cost

of the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

51.     Defendants are also liable to Plaintiffs and the Class Members for any profits, commissions, service fees, premiums or other funds received by Defendants or their affiliates in connection with the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

52.     Unless the Defendants are permanently enjoined by this Court from enforcing Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement when those requirements exceed the insurance coverage obligations of the Plaintiffs and the Class Members under their mortgage agreements, the Plaintiffs and the Members of the Class will continue to be damaged.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.     Plaintiffs incorporate the above paragraphs by reference.

54.     The mortgage agreements of Plaintiffs and the Class are binding

contracts.

55.     Each of those contracts contains an implied covenant of good faith and fair dealing.

56.     The implied covenant of good faith and fair dealing required each party to the contract to be honest in its dealings and not purposefully to take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.

57.     By forcing Plaintiffs and the Class to maintain and pay for hazard or flood insurance coverage in excess of the coverage required by their mortgage agreements, Defendants acted in bad faith and breached the implied covenant of good faith and fair dealing contained in the mortgage agreements.

58.     As a direct result of Defendants' breach of the implied covenant of good faith and fair dealing contained in the mortgage agreements, Plaintiffs and the Class have been damaged.

59.     Defendants are liable to Plaintiffs and the Class Members for the cost of the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

60.     Defendants are also liable to Plaintiffs and the Class Members for any

profits, commissions, service fees, premiums or other funds received by Defendants or their affiliates in connection with the hazard or flood insurance coverage purchased by Defendants for Plaintiffs and the Class Members that exceeded the amount of hazard or flood insurance that the Plaintiffs and Class Members were required to maintain pursuant to their mortgage agreements.

61.     Unless the Defendants are permanently enjoined by this Court from enforcing Defendants' Hazard Insurance Coverage Requirement and Defendants' Flood Insurance Coverage Requirement when those requirements exceed the insurance coverage obligations of the Plaintiffs and the Class Members under their mortgage agreements, the Plaintiffs and the Members of the Class will continue to be damaged.

**JURY DEMAND**

62.     Plaintiffs demand a trial by jury on all claims so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    An order allowing this action to proceed as a class action under Fed. R. Civ. P. 23;

2.    Determining that the Defendants' conduct as described herein, and as will be established at trial, breached the mortgage contracts of the Plaintiffs and the Members of the Class;

3.    Determining that the Defendants' conduct as described herein, and as will be established at trial, breached the implied covenant of good faith and fair dealing between Defendants and the Plaintiffs and the Members of the Class;

4.    Awarding Plaintiffs and Members of the Class damages in an amount to be proven at trial, plus interest and costs;

5.    Entering a permanent injunction enjoining the Defendants from requiring the Plaintiffs and the Class Members to maintain more hazard or flood insurance coverage than required by their mortgage agreements;

6.    Awarding counsel for the Plaintiffs and the Class their reasonable attorneys fees and expenses; and

7.    Any such other and further relief which the Court finds just and proper.

Dated: September 17, 2010

Respectfully submitted,


**/s/ Edward F. Haber**
Edward F. Haber (BBO# 215620)
Michelle H. Blauner (BBO# 549049)
Robert E. Ditzion (BBO# 660962)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
rditzion@shulaw.com

ATTORNEYS FOR THE
PLAINTIFFS AND THE CLASS